## Commonwealth ex rel. Peters, Appellant, *v.* Maroney.

Argued October 2, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Barney Phillips,* for appellant.

*Edwin J. Martin,* Assistant District Attorney, with him *Louis Abromson,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 10, 1964:

Willie Peters, who was indicted on a charge of murder, pleaded guilty. The Court, without a jury, heard evidence to determine the degree of guilt and affix the penalty. It convicted him of murder in the second degree and sentenced him to a term of imprisonment not less than 10 nor more than 20 years.

He has now filed a petition for a writ of habeas corpus, averring that it was not proved at the trial that the death of Vincent Consentino, 73 years of age, who was admittedly struck and kicked by the defendant, was the result of the physical violence visited on him by the defendant. On July 7, 1960, the defendant physically attacked Consentino for the purpose of robbing him of his wallet and when Consentino resisted, Peters knocked him to the street and kicked him. Consentino was taken to the hospital and died 8 days later, the immediate cause of the death being pneumonia.

The defendant maintains that, such being the case, he could not be convicted of murder since it was a disease and not trauma which brought about the demise of Consentino. The disease, however, was the direct result of the trauma. It was the culminating link in the chain of causation forged by the defendant. Dr. Theodore R. Helmbold, a qualified pathologist, tes-

tified: "A. . . . From this examination I am of the opinion that death was due to acute bilateral bronchopneumonia following contusions of head and face with extradural intracranial hemorrhage. Q. Was there, in your opinion, Doctor, a causal relationship between the injury and the pneumonia? A. Yes, in my opinion there was. Pneumonia, bronchopneumonia, which is always a secondary thing, secondary to something else. It sets in as a complication. Q. That was the immediate cause of death, the acute bronchopneumonia? A. Yes. . . . A. . . . A fall that resulted in injuries that would cause the individual to be confined would cause certainly sufficient trauma that you could have this complication of acute bronchial pneumonia coming on. Of course, the confinement in the hospital, or confinement to bed itself is not the 100 per cent cause of these things. I mean an individual who has suffered a traumatic experience, of course, has a certain amount of shock, and all those sort of things also contribute. The amount they contribute depends entirely upon the extent of them, and the individual's physical condition. Q. The same contusions and bruises and so on a man of 20, 30, or in that neighborhood, Doctor, would rarely, if ever, have resulted as it did in this particular man's case? A. Well, you must remember this man had these hemorrhages in his head."

From this testimony it is evident that Consentino's death was the direct result of Peters' blows as much as if Peters had kicked Consentino in the chest and collapsed his lungs. In *Commonwealth v. Scovern*, 292 Pa. 26, 33, this Court said: "Proof of corpus delicti is not weakened by the fact that the medical testimony shows a disease or various diseases, the product of the wound itself, combined to produce death. It was of no consequence that the deceased died of pneumonia, or suppurated splenitis, if either were superinduced by the bullet wound, or from the operation deemed neces-

sary to save the victim's life: Com. v. Eisenhower, 181 Pa. 470."

In *Commonwealth v. Williams*, 304 Pa. 299, the defendant requested the trial court to charge: "Defendant's first request, as follows 'Although it is admitted in this case that the defendant fired the shot that inflicted the wound, it is still necessary that the Commonwealth prove to you beyond any reasonable doubt that this bullet wound was the direct cause of the death of Fred Walker.'"

The trial court refused to so charge and this Court held such refusal was not error: "The words 'direct cause of the death', meaning immediate cause of death, are misleading. For example, in the instant case, the immediate cause of death was the secondary hemorrhage, but defendant was none the less responsible as the gunshot wounds she had made caused the infection and secondary hemorrhage, as would an assailant be whose wound pierced the lungs, causing death by pneumonia. Therefore, a defendant cannot escape where his violence produces a condition causing death, although the condition might be the immediate cause."

This principle of law adopted by our Court is followed in Federal Courts. In *United States v. Hamilton*, 182 F. Supp. 548, the victim of the homicidal attack, while in the hospital, withdrew breathing tubes from his nostrils and, in consequence, died of asphyxiation. The tubes had been inserted to assist the patient in breathing because of severe injuries to his face inflicted by the defendant. The defendant argued that it was the deceased's own fault that he died. The United States District Court of Columbia rejected this contention: "It is well established that if a person strikes another and inflicts a blow that may not be mortal in and of itself but thereby starts a chain of causation that leads to death, he is guilty of homicide. This is

true even if the deceased contributes to his own death or hastens it by failing to take proper treatment.

"The principles of the common law on this subject are summarized in Hale's Pleas of the Crown, Volume I, p. 427, in a passage that has been frequently quoted. He says: 'If a man give another a stroke, which it may be, is not in itself so mortal, but that with good care he might be cured, yet if he die of this wound within a year and a day, it is homicide or murder, as the case is, and so it hath been always ruled.' . . .

"Hawkins' Pleas of the Crown, Volume 1, Chapter 31, Section 10, summarizes this principle very succinctly. He says: 'But if a person hurt by another, die thereof within a year and a day, it is no excuse for the other that he might have recovered, if he had not neglected to take care of himself.' "

Order affirmed.