446 A.2d 1346

**COMMONWEALTH of Pennsylvania**

v.

**Charles M. DAWSON, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1982.

Filed June 18, 1982.

---

Steven Kocherzat, Beaver, for appellant.

John Lee Brown, Assistant District Attorney, Beaver, for Commonwealth, appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

CIRILLO, Judge:

Appellant, Charles M. Dawson, appeals from the judgment of sentence entered against him on January 28, 1981. He was found guilty by a jury on October 28, 1980 of two counts of aggravated assault,[1] four counts of simple assault, and two counts of recklessly endangering another person.[2] Appellant was sentenced to not less than one nor more than two years imprisonment on one aggravated assault conviction and, on the other aggravated assault conviction, he was sentenced to three years probation to commence consecutively after imprisonment. The trial court denied appellant's motions for new trial and in arrest of judgment. This appeal followed.

Appellant presents two issues for our review: (1) the trial court abused its discretion in furnishing the jury, pursuant to its request, with a written statement defining the statutory elements of the crimes charged, and (2) the trial court abused its discretion in not giving the jury a statement defining self-defense since the trial court complied with the jury's other request.

In regard to appellant's first contention, Rule 1114 of the Pennsylvania Rules of Criminal Procedure provides:

> Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or the indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial court deems proper.

1. The two victims of the assaults suffered multiple lacerations after being knifed by appellant during a street fight.

2. At sentencing, the trial court merged the convictions of simple assault and recklessly endangering another person into the aggravated assault convictions.

In the instant case, shortly after the jury began its deliberations, the jurors sent a hand-written request to the trial court for clarification of the crimes charged. The request read: "we need written definitions of aggravated assault, simple assault, and recklessly endangering." The trial court held an in-chambers conference with both the prosecutor and defense counsel concerning this request. The trial court felt that it was appropriate to comply with the request because there was a large amount of repetition and overlapping of particular elements of the crimes, and the absence or addition of an element made it difficult to differentiate one crime from another on the basis of memory alone. The court proposed sending to the jury a list of the elements of the various crimes charged in the information. Defense counsel objected that this statement would prejudice appellant, and that the jury would place undue emphasis upon it. After noting defense counsel's objection on the record, the trial court sent the jury the following statement which was typed on a plain, white sheet of paper:

"*Counts One and Two—Aggravated Assault*

Intentionally, knowingly, or recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life.

*Counts Three and Four—Aggravated Assault*

Intentionally or knowingly causing bodily injury to another with a deadly weapon.

*Counts Five and Six—Simple Assault*

Intentionally, knowingly or recklessly causing bodily injury to another.

*Counts Seven and Eight—Simple Assault*

Negligently causing bodily injury to another with a deadly weapon.

*Counts Nine and Ten—Recklessly Endangering*

Recklessly engaging in conduct which places or may place another person in danger of death or serious bodily injury."

The case of *Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406, (1976) first addressed the issue of whether the trial

court erred in sending out a written set of possible verdicts with the jury. In *Baker*, ten instructional questions, prepared by the trial court, were given to the jury, and the following is an example of the type of instructions:

> 5. Did the defendant with malice kill the decedent deliberately by design, even if the design was formed very shortly before the killing? If so, you should find the defendant guilty of murder in the first degree.

*Id.*, 466 Pa. at 396, 353 A.2d at 413 (note 11).

The Supreme Court of Pennsylvania held that the trial court in *Baker* had not abused its discretion in sending the instructions out with the jury. However, the Court went on to hold that the inherent dangers of such a statement given to the jury outweighed the possible benefit to be derived from it, and, that in the future, this practice should not be followed.

In a similar case, *Commonwealth v. Kelly*, 245 Pa.Super. 351, 369 A.2d 438 (1976), the trial judge prepared and sent out with the jury a verdict slip which contained a brief summary, next to each bill of indictment number, describing the factual situation out of which each count arose. Our court held that, although the brief factual statement was not exactly neutral on its face, it was not prejudicial to appellant, and, the trial court did not abuse its discretion in sending it out with the jury. The Supreme Court of Pennsylvania affirmed *Kelly*, 484 Pa. 527, 399 A.2d 1061 (1979) and likewise concluded that the trial court did not abuse its discretion in concluding that there was a need for the identifying notations:

> The notations themselves, while not ideally drawn, were nevertheless in essence neutral and viewed in the context of the court's instructions not suggestive or prejudicial. Unlike *Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976), the language on the verdict slip here is not a condensed and potentially misleading statement of the court's instructions.
>
> . . . .
>
> Nonetheless, it is not inappropriate to observe as a general prudential principle that identifying notations which are

not completely neutral create a potential for prejudice. It is therefore desirable for trial courts in the exercise of their discretion: (1) to determine after consultation with counsel whether, due to the complexity of the charges and the nature of the trial, there is a clear need for identifying notations on a verdict slip to avoid confusion by the jury concerning the issues before it; and, (2) if such a clear need appears, to determine, after conferring with counsel, the text which best preserves the impartiality of the verdict slip.

Id., 484 Pa. at 528–29, 399 A.2d at 1061–2.

After conferring with counsel, the trial court in this case correctly concluded that the jury was confused as evidenced by its request for the definitional statement. If jurors are to attend to their duties conscientiously and render a verdict which is fair, based on their recollection of the facts and understanding of the law as it applies to the immediate facts before them, then, non-prejudicial, supplemental clarification should be given to them when it is requested. In this case, a definite need for supplemental instructions was shown. The statement, as prepared by the trial court, amounted to simple definitions of the elements of the crimes charged. It neither phrased the elements of the crimes in potentially misleading questions as in *Baker*, nor restated the facts in conjunction with the elements as in *Kelly*. Therefore, the test as set forth in *Kelly* was followed by the trial court in this case, and we find no error in the trial court's approach.

Appellant's second contention is that the trial court abused its discretion in not giving the jury a statement defining self-defense since the trial court complied with the jury's other request. Defense counsel requested the trial court to give to the jury a written definition of self-defense. The jury did not request the definition.

The scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. He may properly confine supplemental instructions to the particular question asked by the jury

despite a defendant's request for additional instructions. *Commonwealth v. Haddle*, 271 Pa.Super. 418, 422, 413 A.2d 735, 738 (1979).

The trial court, in its charge to the jury, properly addressed appellant's assertion of self-defense. Appellant does not claim that the trial court's charge was erroneous. We, therefore, find that the trial court did not abuse its discretion in not repeating appellant's assertion of self-defense in supplemental instructions.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent. The majority concludes that the trial court's actions were proper when it sent written instructions, requested by the jury during deliberations, of the elements of the crimes charged but *refused* appellant's request to send out a statement of the elements of self-defense. This was reversible error.

In *Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976), a plurality opinion, our Supreme Court discussed the practice of sending out a written set of possible verdicts with the jury. Our Supreme Court, per Justice NIX, stated the following:

"The obvious danger in such a practice is that the jurors *may tend to overemphasize the importance of the matters touched upon within such a memoranda and possibly ignore the totality of the oral charge.*" *Commonwealth v. Baker, Id.*, 466 Pa. at 396, 353 A.2d at 413 (1976) (Emphasis added). See generally, Annot., 91 A.L.R.3d 382 (1979).

In view of the above, it is apparent that even if the court had the authority to send out "instructions" to the jury, it was improper for the court to *only* allow the jury to have the definitions of the crimes and to deny them access to the "totality of the ... charge", which, of course, would have included a charge on appellant's defense of self-defense. Thus, the trial court's action "may [have] tended to overem-

phasize" the elements of the crimes charged when it granted such a partial request—thereby, deemphasizing appellant's defense.[1]

Additionally, the majority states that the trial court's sending of the "list of the elements of the various crimes charged in information" to the jury was a "non-prejudicial, supplemental clarification". See at 85 and 87. This writer, however, considers the listing sent by the court in the instant case as equivalent to allowing the jury to receive a "copy of the information or indictment," a practice which is specifically prohibited by Rule 1114 of the Pennsylvania Rules of Criminal Procedure.

Rule 1114 and the commentary which accompanies that rule provide as follows:

## "RULE 1114. Material Permitted in Possession of the Jury

*Upon retiring for deliberations,* the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, *nor a copy of the information or indictment.* Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.

Comment: This Rule *substantially changes* the former law in many Pennsylvania counties by prohibiting the jury from receiving a copy of the indictment (or information) during its deliberations, see *Commonwealth v. Schwartz,* 178 Pa.Super. 434, 115 A.2d 826 (1955). The Rule also prohibits the jury from taking into the jury room any written confession of the defendant.

In *Commonwealth v. Pitts,* 450 Pa. 359, 363 n. 1, 301 A.2d 646, 650 n. 1 (1973), the Court noted that 'it would be a better procedure not to allow exhibits into the jury room which would require expert interpretation.'

1. At this time, this writer need not decide whether a *properly* written instruction is among those materials permitted to be taken out with the jury upon retiring for deliberations because, in any event, the trial court had no authority to send out the abbreviated information-type document.

Adopted Jan. 24, 1968. Eff. Aug. 1, 1968. Amended June 28, 1974. Eff. Sept. 1, 1974." (Emphasis added).

With this in mind, we must remember that an information or indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Accord *Commonwealth v. Carter*, 482 Pa. 274, 277, 393 A.2d 660, 661 (1978).

The plain, typed, white sheet of paper which was sent to the jury in the instant case also was similar in *form* and *content* to an information. That paper stated the following:

*"Counts One and Two—Aggravated Assault*

Intentionally, knowingly, or recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life.

*Counts Three and Four—Aggravated Assault*

Intentionally or knowingly causing bodily injury to another with a deadly weapon.

*Counts Five and Six—Simple Assault*

Intentionally, knowingly or recklessly causing bodily injury to another.

*Counts Seven and Eight—Simple Assault*

Negligently causing bodily injury to another with a deadly weapon.

*Counts Nine and Ten—Recklessly Endangering*

Recklessly engaging in conduct which places or may place another person in danger of death or serious bodily injury."

Majority's Slip Opinion at 1347.

It is obvious that the statement by the trial court is merely a recounting of the language found in the Pennsylvania Crimes Code. See 18 Pa.C.S.A. §§ 2701(a)(1) and (2) (simple assault), 2702(a)(1) and (4) (aggravated assault), and 2705 (recklessly endangering another person). Instead, the majority ignores the mandate of Rule 1114 saying that the "statement as prepared by the trial court, amounted to

*simple definitions* of the elements of the crimes charged."
At 87. (Emphasis added). What the majority ignores is
the fact that such "simple definitions" are also the kind of
verbiage contained in most criminal informations, which
again is prohibited material under the Rule. See Pa.R.
Crim.P. 225(b) ("The information ... shall be valid and
sufficient in law if it contains ... a plain and concise
statement of the essential elements of the offense substan-
tially the same as or cognate to the offense alleged in the
complaint. . . .")

Interesting enough, the majority justifies the court's ac-
tion in denying appellant's request to allow the jury to
receive a statement defining self-defense (1) by relying on
the principle that the scope of supplemental instructions
rests within the sound discretion of the trial court, and (2)
by stating that the "trial court, in its charge to the jury,
properly addressed appellant's assertion of self-defense."
At 88. This writer, however, cannot subscribe to the
majority's bootstrap logic. To begin with, the majority
*assumes* without explanation that the statement sent to the
jury was a properly written *"instruction"*. However, the
instruction is not representative of those approved by our
jurisdiction.

However, even accepting the majority's argument that the
statement was a form of an instruction, it was nonetheless
incomplete. A federal circuit court in addressing this issue
stated the following:

"No doubt instructions which [the trial court] *reads and
hands over to the jury* may make a stronger impression
than other instructions *which are not reduced to writing.*
This difference may or may not be important. When the
judge thinks that it is likely to distort the charge as a
whole. . . , he may solve the problem by declining to give
or by declining to hand over any written instructions, or
by reducing his entire charge to writing and reading it to
the jury." *Copeland v. United States*, 80 U.S.App.D.C.
308, 152 F.2d 769 (1945), cert. denied, 328 U.S. 841, 66 S.Ct.
1010, 90 L.Ed.(2d) 1815 (1945).

In view of the above language, it is no consolation to the appellant that the court covered the charge of self-defense in the oral charge when it also emphasized in a *written* statement that he was charged with *ten counts* of assault-related crimes. Hence, I must dissent.