Commonwealth *v.* Skufca, Appellant.

Argued March 15, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*John M. O'Connell, Jr.,* with him *O'Connell, Silvis & Godlewski,* for appellant.

*Louis H. Ceraso,* Assistant District Attorney, and *Albert M. Nichols,* District Attorney, submitted a brief, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, July 1, 1974:

Appellant, Luella Skufca, was convicted by a jury of involuntary manslaughter and of violating §727 of the Act of June 24, 1939, P. L. 872, 18 P.S. §4727. Post-trial motions were denied and an indeterminate sentence not to exceed two years in the Women's Correctional Institution at Muncy was imposed.[1] The Superior Court affirmed without dissent and after the grant of allocatur we now affirm.

On the evening of January 23 and the early morning hours of January 24, 1970, appellant left her two minor children (the oldest child was three (3) years of age and the youngest was ten (10) months) in their apartment unattended[2] while she participated in a

---

[1] The record is not clear as to which bill of indictment the sentence was imposed. The transcript of the sentencing hearing reflects that no reference was made to either bill. The record does contain a copy of an order, which is unsigned and apparently prepared by a clerk, which would indicate that the two-year sentence was imposed on the involuntary manslaughter indictment. However, the parties appear to accept the sentence as having been imposed on each bill to run concurrently and since no objection has been raised and the sentence would be a legal one under either bill we will treat it in the same manner.

[2] The appellant produced evidence that tended to show that she had spoken to a neighbor who had consented to watch out for the children in her absence. This evidence was disputed by the

social evening with friends. Before leaving she put the children in the bedroom and secured the door by inserting two table knives between the door and the jamb in addition to fastening the latch. At approximately 12:05 a.m., while appellant was absent from the premises, a fire started in the building, possibly originating as a result of a defective television set in appellant's apartment. A visitor to the building, learning that the youngsters were trapped in the bedroom, attempted to remove them but was prevented from doing so by the manner in which the door had been fastened. Firemen, upon entry, found the children suffocated in the locked bedroom of the apartment.

Appellant first argues that the testimony presented failed to establish a violation of the Act of June 24, 1939, P. L. 872, §727, 18 P.S. §4727. This section of our penal code provides:

"Whoever, being a parent or other person charged with the care and custody, for nurture or education, of a child under the age of sixteen (16) years, abandons the child in destitute circumstances, or wilfully omits to furnish necessary and proper food, clothing, or shelter for such child, is guilty of a misdemeanor, and upon conviction thereof shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or undergo imprisonment not exceeding two (2) years, or both.

"In case a fine is imposed, the same may be applied, in the discretion of the court, to the support of such child.

"Proof of the abandonment of such child in destitute circumstances, and omission to furnish necessary and proper food, clothing, or shelter, shall be prima facie evidence that such omission was wilful.

---

Commonwealth and was appropriately left to the jury. From the verdict, it is apparent that the jury resolved this issue against appellant.

"Any provision of law prohibiting disclosure of confidential communications between husband and wife shall not apply to prosecutions under this section. 1939, June 24, P. L. 872, §727." 18 P.S. §4727 (1963).

The elements of this offense are: (1) that the accused must be shown to be a "parent or other person charged with the care and custody;" (2) that the victim must be a child under the age of sixteen years; and (3) that the child must be *either* abandoned in destitute circumstances *or* the parent has exhibited a willful failure to supply the necessary and proper food, clothing or shelter for such child. The applicability of the first two elements are without question and the controversy centers around the presence of the third element. The Commonwealth asserts that the evidence satisfactorily establishes that these two minor children were abandoned in destitute circumstances.

The essence of appellant's argument in this regard is the erroneous premise that the word abandon as used in this section is synonymous with the term abandonment as it has been defined under adoption law. In this latter context we have defined the term abandonment to require a course of conduct which evidences a settled purpose to forego all parental duties and relinquish all parental claims. *Sheaffer Appeal*, 452 Pa. 165, 305 A.2d 36 (1973) and *Southard Adoption Case*, 358 Pa. 386, 57 A.2d 904 (1948). That the use of the term abandonment in the Adoption Act[3] was not intended to describe the same conduct in the section here under consideration is readily apparent when we consider the difference in the purposes sought to be achieved by the two pieces of legislation. In the case of adoptions, we are attempting to describe that type of conduct that should justify the legal involuntary

---

[3] See Act of July 24, 1970, P. L. 620, No. 208, art. I, §101 et seq., 1 P.S. §101 et seq. (Supp. 1973-1974).

termination of a relationship created by nature. Under this section of the penal code we are simply attempting to define that type of parental neglect that would justify criminal sanction. Wherein, it is understandable that the involuntary termination of parental rights should not turn upon a single incident regardless how heinous,[4] our criminal law is designed to punish single episodes that are repugnant to our concept of an orderly society.[5]

An accepted meaning of the word abandon is "to forsake or desert especially in spite of an allegiance, duty, or responsibility." *Webster's Third New International Dictionary.* It is difficult to conceive of a more graphic example of the term abandon than that which is presented here, where mere infants were rendered pitifully vulnerable to the dangers of the night as a result of the preoccupation of a mother with her personal pleasures.

Additionally, to accept the meaning urged by appellant would do violence to fundamental rules of statutory construction. Section 727 clearly evidences a legislative intention to provide alternative conduct to supply the third element of the offense. The section proscribes *either* "abandons the child in destitute circumstances, *or* willfully omits to furnish necessary and proper food, clothing, or shelter for such child." (Em-

---

[4] The protection of the immediate best interest of the child is secured by our laws relating to custody.

[5] Compare, *People v. Stephens*, 30 Cal. App. 67, 85 P.2d 487, 489 (1938). "Some argument is made that the word 'abandons' as used in section 271a of the Penal Code should be given the same meaning as in guardianship proceedings. The difference is manifest. Here the word applies to the act of intentionally failing to supply the needs of the child, while in the guardianship cases cited by appellant it is used to describe an act of complete relinquishment of the right of parental control." 30 Cal. App. at 70, 85 P.2d at 489.

phasis added.) To interpret the first of the two clauses cited as requiring proof of conduct on the part of the accused which exhibits a purpose to forego parental duties and relinquish parental claims would reduce the second clause from an alternative type of conduct also justifying criminal sanction to a mere illustration of conduct that would be embraced within the purview of the first clause. It is clear that the second clause was not intended as merely an obvious illustration of the conduct prohibited in the first clause but rather an attempt to proscribe distinctly different conduct.[6] May 28, 1937, P. L. 1019, art. IV, §52(2); 46 P.S. 552 (2). Further the fact that a word or phrase may have acquired a peculiar meaning in a given context does not require us to ignore its common and approved usage when not used within that specific context. May 28, 1937, P. L. 1019, art. III, §33; 46 P.S. 533.

We therefore conclude that the jury was free to find that leaving these minor children of tender years and incapable of protecting themselves unattended for a sustained period, closeted in such a manner that they were denied assistance from without, by a parent who had the duty to provide for their safety and ignored that responsibility for her personal pleasure, fell within the conduct prohibited under this section.[7]

---

[6] This position is strengthened by the legislative history of the statute since the "abandon" provision was missing in the original statute, Act of March 31, 1860, P. L. 382, §90, which criminalized only "refus[al] or neglect to provide [necessary food, clothing or lodging] or . . . assault [against the infant] and was specifically added to the subsequent (Act of 1907, P. L. 318, §§1, 3) and present statutes.

[7] The new penal statute on neglect also covers this conduct: "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the second degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." December 6, 1972, P. L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa. C. S. §4304.

We also find to be without merit appellant's claim that Section 727 is void for vagueness. The United States Supreme Court has recently announced a two-pronged test to be used in assessing a claim of vagueness. *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). The issue must be considered by determining whether the statute or ordinance (1) "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. . . ." and (2) whether "it encourages arbitrary and erratic arrests and convictions." 405 U.S. at 162. See also, *City of Chester v. Elam*, 408 Pa. 350, 184 A.2d 257 (1962). Applying this analysis to the statute in question and its application to the instant factual situation, it is obvious that the due process clause of the United States Constitution has not been violated. The abandoning of a minor child in destitute circumstances in violation of a parental duty of protection defines a type of conduct with sufficient clarity that it can be easily comprehended by one of ordinary intelligance and possesses a degree of preciseness which prevents arbitrary and erratic arrests. Clearly this is not an instance where the conduct prohibited is so intangible or vague that would require men of common intelligence to guess at its meaning and differ as to its application but rather adequately describes conduct which parents of modest sensibilities and possessing only a meager sense of responsibility would find in complete disregard of their obligation.

Equally as untenable is the challenge addressed to the application of the statute to the instant factual situation. Leaving children of tender years, completely dependent upon those in whose care they are entrusted, pathetically vulnerable to any danger that could foreseeably materialize, is the type of conduct that would cause the most callous to find reprehensible. The possibility of a fire in the building was not a re-

mote contingency that might have been reasonably overlooked in appellant's haste to join her friends for a night of pleasure in view of an earlier fire which had occurred just a short time before the incident in question.[8]

Next, appellant asserts that the involuntary manslaughter charge has not been sustained because the Commonwealth has failed to establish that any act or omission of hers caused the deaths. Here, the Commonwealth proceeded under a misdemeanor-manslaughter theory; the misdemeanor in this instance being a violation of Section 727. The use of this theory, however, does not obviate the requirement that the Commonwealth must establish that conduct of the accused was a legal cause of the death. The conduct which constitutes the misdemeanor must also be the legal cause of the death. *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961). The appellant relying on the *Root* decision would have us find that the only legal cause of the death of these small children was the fire and not an act or failure to act on her part. We cannot agree. While it is unquestioned that the direct cause of death was smoke inhalation resulting from the fire it does not follow that other acts which contributed in producing the ultimate result cannot provide a basis for criminal responsibility for the deaths.

Although we have expressly rejected the tort theory of causation in assessing criminal responsibility, *Commonwealth v. Root, supra,* it has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Carn,* 449 Pa. 228, 296 A.2d 753 (1972); *Commonwealth v. Johnson,* 445 Pa. 276,

---

[8] Testimony was introduced that on January 9, 1970, a fire was also discovered in the apartment of appellant.

284 A.2d 734 (1971); *Commonwealth v. Cheeks*, 432 Pa. 67, 223 A.2d 291 (1966); *Commonwealth ex rel. Peters v. Maroney*, 415 Pa. 553, 204 A.2d 459 (1964). Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result. *Commonwealth v. Stafford, supra.* Here the substantial relation between appellant's conduct which constituted the misdemeanor, and the deaths of her children satisfies the causation requirement. Although suffocation due to the fire was the immediate medical cause of the children's death, appellant's unlawful conduct in leaving them locked in the room, without supervision, for several hours, susceptible to numerous foreseeable dangers, was the legal cause of their death. Accord, *Delay v. Brainard*, 182 Neb. 509, 156 N.W. 2d 14 (1968); *People v. Ogg*, 26 Mich. App. 372, 182 N.W.2d 570 (1970). But see, *People v. Rodriguez*, 186 Cal. App. 2d 433, 8 Cal. Rpt. 863 (1960). The fire produced its fatal result only because of the defenseless position the young victims were left in through their mother's unlawful conduct. Cf., *Commonwealth v. Feinberg*, 433 Pa. 558, 253 A.2d 636 (1969).

We also reject appellant's suggestion that the court's reference in two instances during the course of his charge to a "substantial contributing cause" was an adoption of the tort theory of causation. Reading the court's charge as a whole, as we must, see *Commonwealth v. Stafford, supra; Commonwealth v. Zapata*, 447 Pa. 322, 328, 290 A.2d 114, 117-18 (1972); *Commonwealth v. Butler*, 442 Pa. 30, 34, 272 A.2d 916, 919 (1971), we are satisfied that the jury was properly instructed on the question of causation. Moreover, the court instructed the jury in accordance with the defense's requested points of charge regarding this issue.

Lastly, appellant objects to the admissibility of certain evidence. She argues that the admission of evidence relating to a prior fire (see footnote 8) and the allowance of the fire marshal to testify as to the origin and cause of the fire in question were improper and justify reversal. As to the evidence of the prior fire an objection to its relevancy is clearly without merit. We have on other occasions stated that the introduction of testimony pertaining to a prior event is permissible when it is offered to establish knowledge possessed by the accused. *Muller v. Kirschbaum*, 298 Pa. 560, 148 A. 851 (1930); *Joyce v. Black*, 226 Pa. 408, 75 A. 602 (1910); see also, 87 A.L.R.2d 891 (1963).

The fire marshal opined that the television set had been defective and was possibly the cause of the fire. In any case where death is allegedly criminally caused by fire, the origin of that fire is obviously germane to the inquiry. Interestingly appellant, in her brief, attempts to use this testimony to bolster her argument that she was not responsible for the death. It is thus difficult at best to understand her argument that this evidence, upon which at one point she seeks to rely should be considered irrelevant and justify reversal. For the same reason we find little merit in her objection based upon a lack of a sufficient foundation for the opinion.

The Order of the Superior Court affirming the judgment of sentence is hereby affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS, MR. JUSTICE POMEROY AND MR. JUSTICE MANDERINO:

Mr. Justice ROBERTS, Mr. Justice POMEROY and Mr. Justice MANDERINO dissent, believing that appellant's actions did not constitute "abandon[ment of a] child in destitute circumstances" within the meaning of the Act of June 24, 1939, P. L. 872, § 727, 18 P.S. § 4727 (1963).