STATE of Iowa, Appellee,

v.

Linda Doreen WILSON, Appellant.

No. 63585.

Supreme Court of Iowa.

Jan. 23, 1980.

Kjas T. Long, of Hinton & Long, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., John G. Black, Spec. Asst. Atty. Gen., Bruce C. McDonald, Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the meaning of "abandons" in our statute on wanton neglect of minors, § 726.6(2), Code Supp. 1977, now § 726.6(2), The Code 1979.

Wanton neglect was punishable under the predecessor statute in section 731A.1 of the 1977 Code and was defined thus in section 731A.2:

"Wanton neglect" as contemplated by section 731A.1 is willful neglect of such a nature, arising under such circumstances as a parent of ordinary intelligence actuated by normal and natural concern for the welfare of the child would not permit or be a party to.

Section 726.6 of the 1977 Supplement provides (paragraph number 2 is involved here):

A person who is the parent or adoptive parent or any person having custody of any minor commits wanton neglect of a minor when the person does any of the following:

1. The person knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of such minor.

A parent or adoptive parent or person having custody who provides his or her minor child exclusively with nonmedical treatment by a religious method of healing permitted under the laws of this state shall not, for this reason alone, be considered in violation of this subsection.

2. The person *abandons* such minor to fend for himself or herself, knowing that the minor is unable to do so.

Wanton neglect of a minor is a serious misdemeanor. [Emphasis added.]

The legislature evidently regarded violation of new section 726.6 to be more grave than violation of prior section 731A.1. The maximum punishment for violating new section 726.6 is imprisonment for a year plus a fine of $1000. § 903.1(2), The Code 1979. The maximum punishment for violating prior section 731A.1 was imprisonment for thirty days or a fine of $100. § 731A.3, The Code 1977.

In the same act containing new section 726.6, the General Assembly also enacted related section 726.3 of the 1977 Code Supplement:

A person who is the father, mother, or some other person having custody of a child, or of any other person who by reason of mental or physical disability is not able to care for himself or herself, who knowingly or recklessly exposes such person to a hazard or danger against which such person cannot reasonably be expected to protect himself or herself or who deserts or abandons such person, knowing or having reason to believe that the person will be exposed to such hazard or danger, commits a class C felony.

At its next session, in 1978, the same General Assembly designated abandonment as a ground for finding a juvenile a "child in need of assistance" for *civil* purposes. § 232.2(5)(*a*), The Code 1979. The Assembly defined abandonment thus in section 232.2(1):

"*Abandonment of a child*" means the permanent relinquishment or surrender, without reference to any particular person, of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.

*See also*, § 600A.2(16), The Code (same definition in termination of parental rights chapter).

Defendant Linda Doreen Wilson lived alone with her 18-month-old child in a basement apartment, where she did not have a telephone. Shortly after 6:00 p. m. on November 24, 1978, she left the child unattended in the apartment with one entrance door locked and the other unlocked and the television running. *According to her testimony* she went to a public telephone at a nearby gasoline station to call a boy friend or friends. The precise length of her absence is in dispute; a finding of up to approximately 90 minutes would have substantial evidentiary support.

While defendant was away her stepmother came to the apartment and could hear the child inside and the sound of the television. She shouted and banged on the door, which was not locked, and then went to the other door, which was locked. She then drove home to get assistance from defendant's father. Those two went to the apartment, entered through the unlocked door, and found the child wearing a wet diaper and trying to eat an unpeeled orange. They called the police, who asked them to take the child home until a social worker could become involved. Meanwhile defendant returned to the apartment and, finding the child gone and trying to locate him, called her sister. On learning what had transpired, defendant called her father and stepmother and asked them not to let a social worker take the child. They did so anyway, and on Monday following the juvenile court took custody of the child from defendant.

Defendant's version of the facts was somewhat more favorable to the defense than the evidence we have recited, but that testimony need not be considered in the view we take of the case.

The county attorney charged defendant with wanton neglect of a minor founded on alleged abandonment of the child under section 726.6(2). The trial court found defendant guilty and imposed sentence, and defendant appealed to this court.

We thoroughly disapprove of defendant's leaving her child unattended while she carried out her own selfish purposes. No imagination is required to anticipate the harm which might have befallen the child. He might have turned on the stove or crawled into the refrigerator, or an intruder might have entered the apartment through the unlocked door. Yet if both doors had been locked, the child would have been subjected to added hazard from fire. *See Commonwealth v. Skufca*, 457 Pa. 124, 127, 321 A.2d 889, 891, *appeal dismissed*, 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974) (two unattended children suffocated from fire in bedroom with door jammed shut with knives).

But the issue before the court is not whether we disapprove of defendant's conduct but whether the State introduced substantial evidence that defendant abandoned her child. That her absence was temporary, up to about ninety minutes, and that she intended to and did return, are beyond question. Did the General Assembly intend to encompass a temporary absence within the term "abandons" in section 726.6(2), under which the county attorney charged defendant?

Two principles of statutory construction are particularly relevant. One is that criminal statutes are not to be expanded by interpretation but are to be confined to their terms. "It is settled rule in this state that criminal statutes are to be strictly construed, and not extended to include an offense not clearly within the fair scope of the language employed." *State v. Campbell*, 217 Iowa 848, 853, 251 N.W. 717, 719 (1933) (citations omitted). The other principle is that in enacting a statute, a legislative body is presumed to know the usual meaning ascribed by the courts to language and to intend that meaning unless the context shows otherwise. *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110, 119, *rehearing denied*, 308 U.S. 637, 60 S.Ct. 258, 84 L.Ed. 529 (1939) ("[W]e adhere to the familiar rule that where words are employed in an act which had at the time a well known meaning in the law, they are used in that sense unless the context requires the contrary."); *Henry v. United States*, 251 U.S. 393, 395, 40 S.Ct. 185, 186, 64 L.Ed.2d 322, 323 (1920) ("The law uses familiar legal expressions in their familiar legal sense . . . ."); 73 Am.Jur.2d *Statutes* § 165, at 369 ("Legislatures are presumed by the courts to have used statutory terms under consideration in their judicially established meaning, in the absence of an appearance of anything to indicate a different intention."), § 206, at 402, § 239, at 418 (1974); 82 C.J.S. *Statutes* § 361, at 792–93 (1953). *See also,* § 4.1(2), The Code 1979.

What then has been the meaning the courts have generally given to "abandons"? Criminal statutes of the kind we have here are very old, and the term "abandon" in them has generally been construed to mean an intention to leave the child permanently, as distinguished from temporary neglect. One of the early decisions at the root of this interpretation is *State v. Davis*, 70 Mo. 467 (1879). The court stated, *id.* at 468:

> The abandonment of a child is a statutory offense, and the language of the statute is sufficient in an indictment, to charge the crime. Abandonment does not mean a mere temporary absence from home, or temporary neglect of parental duty. Bouvier defines abandonment thus: "the act of a husband, or wife, who leaves his or her consort, willfully and with an intention of causing perpetual separation." Webster defines it as "a total desertion; a state of being forsaken."

The Georgia Supreme Court quoted *Davis* and other cases in *Gay v. State*, 105 Ga. 599, 603, 31 S.E. 569, 570 (1898) ("Applying to the word 'abandon' as found in this statute, the meaning which is to be drawn from the definitions above given, it seems clear that, to constitute the abandonment of a child by a father, there must be an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation, and throw off all obligations growing out of the same . . . ."). *See also, In re Shannon T.*, 87 Misc.2d 744, 748, 386 N.Y.S.2d 726, 729 (1976); *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) ("To frame a precise definition of abandonment which would cover all cases would be difficult indeed. The most frequently approved definition is that abandonment imports any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." Citations omitted.). The editors state in 23 Am.Jur.2d *Desertion & Nonsupport* § 58, at 957 (1965):

> To constitute abandonment or desertion of a child within the meaning of statutes making it an offense, there must be an actual, voluntary or wilful desertion of the child, without justification, and with an intent to sever the parental

relation entirely, so far as it is possible to do so, and to throw off all obligations growing out of such relation.

As stated in 67A C.J.S. *Parent & Child* § 166, at 570 (1978) (footnotes omitted):

> While a substantial period of inattention, when unexplained, or insufficiently excused, may constitute abandonment, an abandonment is not committed by a mere temporary absence from a child, by a temporary neglect of parental duty, or by the children voluntarily leaving the parent.

Abandon is defined thus in *Black's Law Dictionary* (Rev. Fourth Ed. 1968):

> To desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. *Burroughs v. Pacific Telephone & Telegraph Co.*, 220 P. 152, 155, 109 Or. 404. To give up or to cease to use. *Southern Ry. Co. v. Commonwealth*, 105 S.E. 65, 67, 128 Va. 176. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. *Commonwealth v. Louisville & N.R. Co.*, 258 S.W. 101, 102, 201 Ky. 670. It includes the intention, and also the external act by which it is carried into effect.

The term is thus defined under "abandoned" in *Webster's Third New International Dictionary* (1961): "given up: deserted, forsaken (an [abandoned] child) (an [abandoned] house)".

Our own decisions which have dealt with "abandonment" in various contexts convey this element of permanency. In the adoption situation we stated the following in *Pitzenberger v. Schnack*, 215 Iowa 466, 469–70, 245 N.W. 713, 714–15 (1932) (citations omitted):

> To constitute an abandonment, there must be a relinquishment or surrender of rights or property by one person to another; a giving up; a total desertion. It includes both the intention to abandon and the external act by which the intention is carried into effect.
>
> In a technical sense, the word means the relinquishment of a right, the giving up of something to which one is entitled; the giving up of a thing absolutely without reference to any particular person or purpose.
>
> Many cases have defined the term "abandonment" as used in the law, but in all of them will be found that intention is an element of abandonment. As applied to the facts in this case, there is no showing that there was ever any intention on the part of the mother to abandon this child, and, in addition to this, the evidence shows that she was under a judgment of insanity for over a year, and was not discharged therefrom as recovered until after the adoption proceedings. [B]eing insane, she was not in a position to have or exercise the intention which is necessary to abandonment. The real truth of the matter, as reflected by this record, shows that she at all times was demanding the child, and these demands were never acceded to by the Pitzenbergers, and it rather looks as though the whole proceeding was an effort to deprive her of her child. We conclude, therefore, that the district court erred in refusing to set aside this judgment of adoption and in not dismissing the plaintiffs' petition for such adoption. The case is remanded to the district court with directions to set aside the judgment of adoption and dismiss the petition.

Recently we reaffirmed this concept of abandonment in *Doan Thi Anh v. Nelson*, 245 N.W.2d 511, 515 (Iowa 1976).

In arguing that abandonment should take on the character of temporarily leaving a child unattended, in the present type of situation, the State relies on *Commonwealth v. Skufca*, 457 Pa. 124, 130, 321 A.2d 889, 892–93 (1974) (four-to-three decision). That case does give the State some support. When considering a decision from another jurisdiction, however, the language of the statute involved must be compared with our own. The statute in *Skufca* is distinguishable from section 762.6(2). The court there pointed out, "The section proscribes *either* 'abandons the child in destitute circumstances, *or* wilfully omits to furnish neces-

sary and proper food, clothing, or shelter for such child.'" 457 Pa. at 129–30, 321 A.2d at 892 (emphasis added). In any event, the overwhelming weight of the judicial decisions involving the crime of parental abandonment of children is to the effect that "abandon" includes the element of permanency.

When our General Assembly enacted section 726.6 it provided in paragraph 2 that the crime is committed when a parent "abandons" a child to fend for himself or herself. In view of the general understanding of that term in a long line of decisions, we think the legislature used the term in its usual sense of permanency. We are the more wary of equating the term "abandons" to "temporarily neglects" because of the rule that criminal statutes are not to be enlarged by construction.

The trial court should have dismissed the charge founded on section 726.6(2).

REVERSED.