**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Christine RUBY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 30, 2003.

Filed Dec. 8, 2003.

Ahmed T. Aziz, Asst. Dist. Atty., Beaver, for Com., appellant.

Kenneth G. Fawcett, Ambridge, for appellee.

Before: JOYCE, BENDER and POPOVICH, JJ.

JOYCE, J.

¶ 1 The Commonwealth appeals the order of the trial court entered November 15, 2002 which granted the petition for writ of *habeas corpus* filed by Appellee Christine Ruby. We affirm. The relevant facts and procedural history are as follows.

¶ 2 The facts of this case are undisputed. Christine Ruby lived in a well maintained home on Market Street in Beaver County with her husband and three children. On July 30, 2002, Ms. Ruby picked up the two older children from gymnastics class, shopped at the fruit market, returned

home and was preparing the children's lunch when twenty-one month old Alex began throwing a temper tantrum. As the child lay on the floor crying uncontrollably, Ms. Ruby became upset and lightly struck the child in the chest. The child took a strange breath and Ms. Ruby knew immediately that something was wrong. Therefore, she dialed 911, and Medic Rescue and the police arrived in short time. Ms. Ruby stated to police that she "did it" and that she "ruined her life." Despite medical attention, Alex died at the scene.

¶ 3 Ms. Ruby was transported to the police station where she participated in an interview with Detective Robert Heberle. She admitted to Detective Heberle that she had stuck Alex in the chest with a closed fist. Thereafter, Ms. Ruby was interviewed by Dr. James Smith, a pathologist and board-certified thoracic surgeon. Ms. Ruby described the blow to Alex's chest as a light one. This description was consistent with Dr. Smith's subsequent autopsy findings, which noted no red marks or bruising on or around Alex's chest. The results of Dr. Smith's autopsy named the cause of death as "commotio cordis" which is the Latin phrase for "concussion of the heart."

¶ 4 Ms. Ruby was charged with involuntary manslaughter, 18 Pa.C.S.A. § 2504(a). At a preliminary hearing conducted on September 2, 2002, only Officer Michael Stahl, who responded to the 911 emergency call, and Dr. Smith testified. Despite the fact that Dr. Smith concluded that Ms. Ruby could not have known or foreseen that her striking Alex in the chest lightly placed him in danger of death, the charges were bound over for trial.

¶ 5 On October 18, 2002, Ms. Ruby filed a petition for writ of *habeas corpus*. A hearing was conducted on November 13, 2002 and the trial court granted the petition on November 15, 2002. The Commonwealth has appealed that order.

¶ 6 When reviewing a trial court's decision to grant a *habeas corpus* petition, we will not reverse the trial court's decision absent a manifest abuse of discretion. *Commonwealth v. Kohlie*, 811 A.2d 1010 (Pa.Super.2002). In order to constitute an abuse of discretion, the record must disclose that the trial court exercised manifestly unreasonable judgment or based its decision on ill will, bias or prejudice. *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa.Super.2002). Furthermore, our scope of review is limited to determining whether the Commonwealth has established a *prima facie* case. *Kohlie*, 811 A.2d at 1013. "In criminal matters, a *prima facie* case is that measure of evidence which, if accepted as true, would justify the conclusion that the defendant committed the offense charged." *Id.* With these standards in mind, we now turn to our discussion of the Commonwealth's sole issue, namely, whether the trial court erred in granting Ms. Ruby's petition for writ of *habeas corpus*.

¶ 7 To overcome Ms. Ruby's petition for writ of habeas corpus, the Commonwealth was required to establish the elements of the crime of involuntary manslaughter. "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). Reckless and negligent conduct in the criminal context are defined as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a

nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3) and (4).

■■ ¶ 8 Thus, in order to prove that Ms. Ruby's conduct in striking Alex in the chest was reckless, it must be established that she consciously disregarded a substantial and unjustifiable risk that Alex would die as a result. Alternatively, to prove that Ms. Ruby acted in a grossly negligent manner, the Commonwealth was required to establish that Ms. Ruby should have been aware of a substantial and unjustifiable risk that Alex' death would result and her failure to perceive the risk was a gross deviation from the standard of care observed by a reasonable person. We agree with the trial court that the Commonwealth was unable to establish a *prima facie* case under either of these definitions.

¶ 9 At the preliminary hearing, Dr. Smith testified that Alex died of commotio cordis, a rare condition affecting children where an immediate cardiovascular collapse follows a blow to the chest. N.T., 9/02/02, at 13–14. Commotio cordis occurs when a mechanical event—a blow to the chest—affects the electrical events in the heart in such a way that the heart beats in an extremely erratic and disorganized manner. *Id.* at 14. As a result, the heart is unable to pump blood and the individual immediately collapses. *Id.* Dr. Smith testified that commotio cordis is caused if the mechanical event occurs when the heart is repolarizing, a time frame which represents 15/100ths of a second. *Id.* at 16.

¶ 10 On cross-examination, Dr. Smith also stated that prior to the post-mortem examination, Ms. Ruby admitted to him that she struck the child lightly on the chest. His autopsy corroborated this statement as there were no red marks or bruising on or around Alex's chest. He testified that this was consistent with commotio cordis in that the mechanical event is completely disproportional to the injury that results.[1] He stated that a commotio cordis event is a blunt, non-penetrating, and usually innocent appearing blow to the chest. *Id.* at 21. He concluded his testimony by agreeing that Ms. Ruby could not have foreseen the danger she was placing Alex in when she struck him in the chest. *Id.* at 24. Thus, even by the testimony of its own expert witness, the Commonwealth failed to establish that Ms. Ruby consciously disregarded a substantial and unjustifiable risk that Alex would die as a result of her conduct or that she should have been aware of a substantial and un-

---

**1.** Some examples of commotio cordis were testified to where the event is disproportional to the injury. Theses examples included children dying when struck in the chest at the precise millisecond by: a light jab or push during shadow boxing between friends; a hollow whiffle bat thrown at a child; a dog's head striking a child lightly; and a soft baseball, thrown underhand, that bounced off of a six year old's glove and struck him in the chest. N.T., 9/30/02, at 22–23.

justifiable risk that Alex's death would result from her conduct.

¶ 11 The Commonwealth argues that it was not required to establish that danger of commotio cordis was foreseeable to Ms. Ruby. Instead, the Commonwealth argues that it was only required to show that it was foreseeable to a reasonable person that her conduct in striking a young child who is crying uncontrollably in the chest with a closed fist could cause serious bodily injury or death. To support this proposition, the Commonwealth cites *Commonwealth v. Skufca*, 457 Pa. 124, 321 A.2d 889 (1974), *appeal dismissed, Skufca v. Pennsylvania*, 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974).[2]

¶ 12 In *Skufca*, a mother was convicted of involuntary manslaughter and abandonment of children. She had left her three year old and ten month old children locked in a bedroom in their apartment while she went out for a social evening. When a fire broke out in the apartment, neighbors were unable to gain access to the children because of the locked bedroom door and the children suffocated. On appeal, Skufca argued that the evidence was insufficient to sustain her conviction of involuntary manslaughter because the Commonwealth failed to establish that an act or omission by her caused the children's death. Our Supreme Court disagreed stating:

> [w]hile it is unquestioned that the direct cause of death was smoke inhalation resulting from the fire it does not follow that other acts which contributed in producing the ultimate result cannot provide a basis for criminal responsibility for the deaths. ... Although suffocation due to the fire was the immediate medical cause of the children's death, appellant's unlawful conduct in leaving

them locked in the room, without supervision, for several hours, *susceptible to numerous foreseeable dangers*, was the legal cause of their death.

*Skufca*, 321 A.2d at 893–894 (emphasis added).

¶ 13 Contrary to the Commonwealth's implication, the *Skufca* Court did not negate the foreseeability requirement. Indeed, the *Skufca* Court found that although suffocation due to the fire was the immediate medical cause of the children's death, Skufca's unlawful conduct in leaving the children locked in the room, unsupervised for several hours, susceptible to numerous *foreseeable* dangers, was the legal cause of their death. *Skufca*, 321 A.2d at 893–894. The danger of a fire was one of several *foreseeable* events, the Court concluded, especially in light of the fact that there had been a fire in Skufca's apartment weeks earlier due to a faulty television set that remained in use at the time of the children's death. In order to be reckless or negligent Ms. Ruby must have known or should have known of the risk of death existed and either consciously disregarded the risk or her failure to perceive the risk was a gross deviation from the standard of care observed by a reasonable person in her situation. There is necessarily an aspect of foreseeability in the very definitions of reckless and negligence. Therefore, we disagree with the Commonwealth's contention that the trial court erred in considering whether the Commonwealth failed to establish that the risk of death was foreseeable in considering whether Ms. Ruby had the requisite *mens rea* to commit involuntary manslaughter.

¶ 14 The Commonwealth also posits that *Skufca* mandates reversal of the trial

---

2. Interestingly, this same case is cited by the trial court as authority to grant Ms. Ruby's petition for writ of *habeas corpus*.

court's order because foreseeability refers to the capacity of the actor's conduct to cause harm; foreseeability does not refer to the medical cause of death. Commonwealth's Brief, at 8. The Commonwealth argues that the singular act of striking the child combined with the prevailing circumstances of the moment constitutes reckless or negligent behavior so to establish a *prima facie* case. We disagree. A reasonable person would find it hard to perceive that the solitary act of striking a child lightly on the chest would result in the child's death. Of course, there could be fact specific situations where the risk would be or should be appreciated such as a known medical condition, for example. However, to hit a child so lightly that not even a red mark were to appear does not constitute either a conscious disregard of a substantial and unjustifiable risk of death nor does it constitute a gross deviation from the standard of care for failing to perceive the risk. The reality of this case is that Ms. Ruby regrettably struck Alex in the precisely right spot and at the exact millisecond causing a bizarre and rare concussion of the heart resulting in death. While certain facts patterns where a child is struck once might support a charge of involuntary manslaughter, we must agree that the trial court did not abuse its discretion in finding that the facts of this case do not support the charge.

¶ 15 In the present case, even the Commonwealth's own expert stated that Ms. Ruby could not have foreseen that the action of lightly striking Alex on the chest would have resulted in death to the child. There was not one scintilla of evidence introduced otherwise. Because the undisputed medical testimony states that Ms. Ruby could not foresee that she was placing the child in danger, she could not consciously disregard the danger nor grossly depart from a standard of reasonable care by failing to perceive the risk.

Since the Commonwealth was unable to establish a *prima facie* case against Ms. Ruby, the trial court did not abuse its discretion in granting Ms. Ruby's petition for writ of *habeas corpus*.

¶ 16 Order affirmed.