J-A18003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OWEN LABRENN COPNEY | : | No. 983 WDA 2020 |

Appeal from the Order Entered August 13, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0001876-2019

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED: OCTOBER 12, 2021**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth) appeals from the order entered on August 13, 2020, granting a petition for *habeas corpus* filed by Owen Labrenn Copney (Copney) and thereby dismissing criminal charges of involuntary manslaughter and endangering the welfare of a child as charged by the Commonwealth.[1]  We affirm.

The trial court set forth the facts and procedural history of this case as follows:

> The instant case arises out of an investigation into the death of [Copney's] five-week-old child (hereinafter referred to as "I.C." [or "the child" or "the baby"]) on September 19, 2018, from an incident alleged to have occurred on September 17, 2018, when [Copney] allegedly fell asleep with the child on his chest and woke up to the child in a[n] unresponsive state.  The child subsequently passed away after being transported to Children's Hospital in Pittsburgh.  Pursuant to the Allegheny County [a]utopsy [r]eport,

---

[1]  18 Pa.C.S.A. §§ 2504(a) and 4304(a)(1), respectively.

the cause of death was determined to be "Sudden Unexplained Infant Death (SUID) Syndrome," and the manner of death was listed as being "undetermined." As a result of the investigation, [Copney] was arrested and charged [with the aforementioned crimes].

On April 30, 2019, a [p]reliminary [h]earing was held before Magisterial District Judge Cheryl Peck-Yakopec at which time Westmoreland County Detective John Clark was called to testify. At that time, [Copney] was represented by Attorney Michael Worgul. At the conclusion of the [p]reliminary [h]earing, all charges were held for court. On or about January 16, 2020, [Copney] filed a [p]etition for [w]rit of [*h*]abeas [*c*]orpus alleging that the Commonwealth [was] unable to establish *prima facie* evidence of the above-referenced offenses. A hearing was held before [the trial c]ourt on June 5, 2020. The deceased child's mother, Kayla Ball, was the sole witness to testify at that hearing.

During the *habeas corpus* proceeding, Ms. Ball testified that [Copney] was I.C.'s father, and she had an ongoing relationship with him through her pregnancy and after. Ms. Ball stated that she and [Copney] talked a lot together about safe measures concerning their baby. On one occasion, Ms. Ball indicated that [Copney] told her she could go to sleep[] and she was awoken to the baby hitting her as [Copney] pushed the baby off his shoulders after falling asleep. On a second occasion, Ms. Ball stated that she woke up observing [Copney] sleeping with his arm covering the baby's face. Both times, Ms. Ball indicated that she spoke with [Copney] about this behavior, and they agreed after the second incident to no longer sleep with the baby. On the date of the incident, Ms. Ball testified that she went to [Copney's] friend's residence, [where Copney] was staying, and dropped off their baby so [Copney] could spend time with him. On cross-examination, Ms. Ball confirmed that, even though it was not her intention for the baby to fall asleep in the bed with her and [Copney], it [] happened on more than two occasions.

The UPMC Children's Hospital Child Advocacy Center [r]eport, the [p]olice [i]nterview [r]eport, and the Allegheny County [a]utopsy [r]eport were admitted into evidence as Commonwealth's Exhibits 1, 2, and 3. Exhibit 2 [was] an interview between Detectives John Clark and John Manderino of the Westmoreland County Detective Bureau and [Copney] on September 21, 2018 at Leechburg Police Station. During the interview, [Copney] acknowledged that, when Ms. Ball left the residence on the date of the incident, he was

awake laying on the couch holding the baby who was laying on his chest with his face down sleeping. The testimony reveal[ed] that [Copney] subsequently fell asleep while holding the baby, and after an hour and a half to two hours, [Copney] awoke and discovered the baby laying diagonally across his chest with the baby's head facing the couch into his armpit. [Copney] denied being covered with any blankets at that time.

When [Copney] rolled the baby over, he observed the baby to be discolored, and the area where his head was located was "real sweaty." [Copney] indicated that he ran upstairs to his friend's room, and his friend tried to locate a pulse. At this time, [Copney] relayed that he and his friend went downstairs, and Ms. Ball walked into the residence, and [Copney] called 9-1-1. [Copney] acknowledged sometimes falling asleep with the baby and having a discussion with Ms. Ball. When asked if his other[, three-year-old] son would sleep on his chest while he was watching him, [Copney] stated, "Yeah, all the time." [Copney] denied using marijuana or taking any medications on the date of the incident. Likewise, [Copney] denied suffering from any type of sleep disorder. When asked, [Copney] acknowledged that he thought the accident could have been avoided if he laid the baby on the other side of the couch and put a pillow next to him. Following oral arguments, [the trial c]ourt took the matter under advisement.

After a thorough review of the exhibits, the testimony from the hearings, and the applicable law, the [trial c]ourt [found] that the evidence presented [did] not support a finding of a *prima facie* case of [i]nvoluntary [m]anslaughter and [e]ndangering the [w]elfare of a [c]hild. The [trial c]ourt [found] that the evidence presented [did] not rise to the level of recklessness or gross negligence required for [i]nvoluntary [m]anslaughter pursuant to 18 Pa.C.S.A. § 2504(a). Despite the evidence presented by the Commonwealth, the [trial c]ourt [found] that [Copney's] behavior, without more, did not amount to a gross deviation of the standard of care a reasonable person would exhibit under the circumstances. The testimony established that [Copney] appeared to be holding the child securely on his chest when he fell asleep on the couch; there did not appear to be any obstructions present, such as blankets; and [Copney] denied being under the influence of any drugs or medication at that time.

Trial Court Opinion, 8/13/2020, at 3-7 (record citations and original brackets omitted; footnote incorporated). On August 13, 2020, the trial court entered an order, and accompanying opinion, granting Copney's *habeas corpus* petition and dismissing the aforementioned criminal charges against him. This timely appeal by the Commonwealth resulted.[2]

On appeal, the Commonwealth presents the following issues for our review:

I. Whether the [trial] court erred in finding that the Commonwealth's evidence was insufficient for a *prima facie* case to support the charge of involuntary manslaughter?

II. Whether the [trial] court erred in finding that the Commonwealth's evidence was insufficient for a *prima facie* case to support the charge of endangering the welfare of children?

Commonwealth's Brief at 4 (complete capitalization omitted).

In both of the issues presented on appeal, the Commonwealth argues that trial court erred by finding insufficient evidence to support *prima facie* cases establishing the charges of involuntary manslaughter and endangering the welfare of a child against Copney. Commonwealth's Brief at 14-36.

Our standard of review is as follows:

---

[2] The Commonwealth filed a notice of appeal on September 10, 2020. On September 22, 2020, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied timely on October 9, 2020. On October 15, 2020, pursuant to Pa.R.A.P. 1925(a), the trial court entered an order relying upon its prior decision filed on August 13, 2020.

[T]he evidentiary sufficiency of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Perez**, 249 A.3d 1092, 1101–1102 (Pa. 2021). The preliminary hearing is not a trial and serves the principal function of protecting the accused's right against an unlawful arrest and detention. **Id.** at 1102. At a preliminary hearing, the Commonwealth bears the burden of proving the *prima facie* case, which is met when it "produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." **Commonwealth v. Montgomery**, 234 A.3d 523, 533 (Pa. 2020) (citation omitted); **see also** Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it."). "The evidence supporting a *prima facie* case need not establish the defendant's guilt beyond a reasonable doubt, but must only demonstrate that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to proceed to a jury." **Montgomery**, 234 A.3d at 533.

In reviewing the determination of whether the Commonwealth met its burden of establishing a *prima facie* case for a charged crime, "the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Commonwealth v. Karetny**, 880 A.2d 505, 513 (Pa. 2005). "Hence, we are not bound by the legal determinations of the trial court." [**Commonwealth v.**] **Dantzler**, 135 A.3d [1109,] 1112 [(Pa. Super. 2016)]. Furthermore, it is inappropriate for the trial court to make weight or credibility determinations when assessing whether the Commonwealth established a *prima facie* case. **Perez**, at 1102.

"[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect [at a preliminary hearing], and the evidence must be read in the light most favorable to the Commonwealth's case." **Id.** at 1102 (citation omitted). "The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established." **Id.** (citation omitted). "The 'more-likely-than-not' test, must be applied to assess the

reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability." ***Id.***

***Commonwealth v. Wroten***, 2021 WL 2460790, at *4-5 (Pa. Super. 2021).

Regarding the "more-likely-than-not test," our Supreme Court has determined:

> Evidentiary inferences, like criminal presumptions, are constitutionally infirm unless the inferred fact is more likely than not to flow from the proved fact on which it is made to depend. Where the inference allowed is tenuously connected to the facts proved by the Commonwealth, due process is lacking.
>
> This "more-likely-than-not" test, which must be applied to inferences already enjoying judicial or legislative sanction, must be viewed as a minimum standard in assessing the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability. Anything less than such a standard would rise no higher than suspicion or conjecture which our law has repeatedly rejected as being a basis for a finding of a *prima facie* case.

***Commonwealth v. Wojdak***, 466 A.2d 991, 996 (Pa. 1983) (internal citations omitted).

In its first issue presented, the Commonwealth contends that the trial court erred by finding the evidence presented was insufficient to support the charge of involuntary manslaughter against Copney. Commonwealth's Brief at 17-27. Here, the Commonwealth maintains:

> In the light most favorable to the Commonwealth and granting all reasonable inferences, the Commonwealth's evidence established that [Copney] consciously disregarded a substantial and unjustifiable risk by unsafe sleeping with his infant through evidence concerning the incident day, evidence of [Copney's] receipt of prior verbal warnings and discussions with Kayla Ball about the dangers of unsafe sleeping with an infant and evidence of two prior experiences where [Copney] lost control of his or the infant's position while they were sleeping. The Commonwealth

established *prima facie* evidence of the casual nexus between unsafe sleeping and the infant's death through the admissions made by [Copney], the admitted report from Children's Hospital of Pittsburgh, the autopsy report and the detective's testimony at the preliminary hearing that the autopsy cause of death, "sudden unexplained infant death syndrome" or "SUID," included suffocation.

*Id.* at 17-18. The Commonwealth argues that, in this case, "the baby sliding into [Copney's] armpit against the couch was a foreseeable risk and suffocation was a foreseeable risk and [Copney's] disregard involved a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *Id.* at 22.

Involuntary manslaughter is statutorily defined as:

**(a) General rule.--**A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

**(b) Grading.--**Involuntary manslaughter is a misdemeanor of the first degree. Where the victim is under 12 years of age and is in the care, custody or control of the person who caused the death, involuntary manslaughter is a felony of the second degree.

18 Pa.C.S.A. § 2504.

Moreover, our legislature has defined the general requirements of culpability as follows:

a) **Minimum requirements of culpability**.—[] a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

**(b) Kinds of culpability defined.--**

\*     \*     \*

- 7 -

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302.

Here, the Commonwealth argues that it provided *prima facie* evidence that Copney acted recklessly pursuant to the above-quoted statutory provisions. Commonwealth's Brief at 19-20. The Commonwealth asserts after becoming aware of a substantial and unjustifiable risk to another person, an actor is reckless when he or she consciously disregards the risk and proceeds in spite of it. *Id.* at 21. The Commonwealth contends that in this case, "the baby sliding into [Copney's] armpit against the couch was a foreseeable risk and suffocation was a foreseeable risk and [Copney's] disregard involved a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation" because Copney was "warned against sleeping with the baby and [] entered into a verbal agreement to not sleep with the

baby after prior incidents." *Id.* at 22. Moreover, the Commonwealth maintains that Copney knew that both his body and the couch could be obstructions and, thus, the trial court erred by concluding there were no obstructions present. *Id.* at 24. Instead, the Commonwealth suggests that Copney "could have chosen to remain upright, he could have walked with the baby, or he could have placed the baby on a clear spot on the floor." *Id.* Finally, the Commonwealth argues that the charge of involuntary manslaughter does not require an intentional act and acknowledges that it "has never asserted that [Copney] intentionally smothered the baby." *Id.* at 25. However, the Commonwealth suggests that it "established a causal nexus between the unsafe sleeping and the baby's death based upon [Copney's] acknowledgment that he smothered the baby, [Children's Hospital of Pittsburgh] Dr. Eichman's diagnosis [of 'asphyxiation due to smothering under another person's body/cardiac arrest,'] and [Detective] Clark's testimony at the preliminary hearing that SUID included smothering. *Id.* at 26. In support of these arguments, the Commonwealth principally relies upon our Supreme Court's decisions in *Commonwealth v. Skufca*, 321 A.2d 889 (Pa. 1974) and *Commonwealth v. Huggins*, 836 A.2d 862 (Pa. 2003). *Id.* at 21 and 25.

In *Skufca*,

[Skufca] left her two minor children (the oldest child was three (3) years of age and the youngest was ten (10) months) in their apartment unattended while she participated in a social evening with friends. Before leaving she put the children in the bedroom and secured the door by inserting two table knives between the door and the jamb in addition to fastening the latch. At approximately 12:05 a.m., while [Skufca] was absent from the

premises, a fire started in the building, possibly originating as a result of a defective television set in appellant's apartment. A visitor to the building, learning that the youngsters were trapped in the bedroom, attempted to remove them but was prevented from doing so by the manner in which the door had been fastened. Firemen, upon entry, found the children suffocated in the locked bedroom of the apartment.

*Commonwealth v. Skufca*, 321 A.2d 889, 891 (Pa. 1974) (footnote omitted). Additionally, there was evidence that there had been a fire in the apartment in a previous incident. *Id.* at 893 n.8. "[T]he Commonwealth proceeded under a misdemeanor-manslaughter theory" arguing that Skufca had abandoned the children pursuant to former 18 P.S. § 4727.[3] *Id.* at 893. Our Supreme Court determined:

The abandoning of a minor child in destitute circumstances in violation of a parental duty of protection defines a type of conduct with sufficient clarity that it can be easily comprehended by one of ordinary intelligence and possesses a degree of preciseness which prevents arbitrary and erratic arrests. Clearly this is not an instance where the conduct prohibited is so intangible or vague that would require men of common intelligence to guess at its meaning and differ as to its application but rather adequately describes conduct which parents of modest sensibilities and possessing only a meager sense of responsibility would find in complete disregard of their obligation.

\*        \*        \*

Leaving children of tender years, completely dependent upon those in whose care they are entrusted, pathetically vulnerable to any danger that could foreseeably materialize, is the type of conduct that would cause the most callous to find reprehensible. The possibility of a fire in the building was not a remote contingency that might have been reasonably overlooked in appellant's haste to join her friends for a night of pleasure in view

---

[3] "18 P.S. § 4727 has been repealed [and] superceded by 18 Pa.C.S.A. § 4304" (endangering the welfare of a child). *Commonwealth v. Miller*, 600 A.2d 988, 990–991 n.1 (Pa. Super. 1992).

of an earlier fire which had occurred just a short time before the incident in question.

***Id.*** Ultimately, our Supreme Court upheld Skufca's conviction for involuntary manslaughter, opining:

> Although suffocation due to the fire was the immediate medical cause of the children's death, [Skufca's] unlawful conduct in leaving them locked in the room, without supervision, for several hours, susceptible to numerous foreseeable dangers, was the legal cause of their death. The fire produced its fatal result only because of the defenseless position the young victims were left in through their mother's unlawful conduct.

***Id.*** at 894.

> In ***Huggins***, our Supreme Court held that
>
> [Huggins] allowed himself to fall asleep despite the fact that he was driving a van filled with children. The presence of these children would have led a prudent person to be extra-cautious; far from acting cautiously, however, [Huggins'] van was filled to over-capacity and, in addition, the children were not secured with safety belts. [Huggins] elected to drive at an excessive rate of speed-at least twenty-three miles beyond the 55 m.p.h. speed limit-at the time he allowed himself to fall asleep. Each of these additional factors, beyond the mere fact of falling asleep at the wheel, increased the risk of collision, injury, and death. Moreover, each was a circumstance within [Huggins'] knowledge and control. Viewed in their totality, the circumstances here reveal a pattern of conscious disregard for circumstances that placed the lives of these children in increasing danger. [Our Supreme Court was] also satisfied that the Commonwealth proved that the circumstances [] revealed a disregard of duty and risk which would warrant a jury in finding "a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Accordingly, [our Supreme Court held] that the Commonwealth sufficiently proved a *prima facie* case of two counts of involuntary manslaughter so as to warrant submission of those charges to a jury.

***Commonwealth v. Huggins***, 836 A.2d 862, 870–871 (Pa. 2003).

Here, the trial court determined that Copney's actions "did not amount to a gross deviation from the standard of care that a reasonable person would exhibit under the circumstances." Trial Court Opinion, 8/13/2020, at 6. The trial court further opined:

> Although Ms. Ball testified that two previous incidents cause her concern and she had discussions with [Copney], her testimony revealed that, although it was not her intention, she, [Copney] and the child [had] fallen asleep together on more than just those two occasions. This is not uncommon with tired parents of a newborn. It appears that nothing significant occurred during those times, and Ms. Ball appeared to trust [Copney with] watching their child even after those incidents occurred. In fact, Ms. Ball testified that it was her idea that [Copney] spend some "one on one" time with his son that day. Additionally [the report of the UPMC Children's Hospital Child Advocacy Center diagnosing] asphyxiation due to smothering under another person's body would also encompass an accidental smothering. Further, upon a review of the Allegheny County [a]utopsy [r]eport, in which it was known that [Copney] had a clinical history of co-sleeping with the child on a couch, the associate medical examiner determined the manner of death to be "undetermined," and in his opinion, his best classification of the child's death was from SUID.
>
> Viewing the evidence in the light most favorable to the Commonwealth and considering all reasonable inferences arising therefrom, [the trial c]ourt [found] that the Commonwealth's evidence supports no more than a tragic accident. The evidence in this case could just as easily establish an accident, wherein a father was holding and comforting his son and they both fall asleep together. [The trial court determined it] must judge the conduct based on that of a reasonable person. This case plays out a scenario that is very common in most families with newborns. This is a tragic loss for this family. However, [the trial c]ourt [found] that [Copney's] conduct [did] not rise to the level of recklessness or gross negligence.

*Id.* at 6-7.

Based upon our standard of review and examination of applicable law, we conclude that the trial court did not err by finding that the Commonwealth failed to establish *prima facie* evidence to support the involuntary manslaughter charge against Copney. The trial court determined that Copney's actions did not involve a gross deviation from the standard of conduct that a reasonable person would observe in his situation. We agree. The Commonwealth maintains that suffocation was a foreseeable risk of Copney's decision to lay on the couch with his infant son. Foreseeability, however, is not the definitive standard of culpability for involuntary manslaughter. Rather, the offense requires the undertaking of a lawful act with a conscious disregard of a substantial and unjustifiable risk that death would result. Such disregard must occur under circumstances involving a gross deviation from the standard of care that a reasonable person would observe in similar circumstances. A parent who picks up a child might foresee that the child's death could result from a fall or being dropped. Likewise, a parent who encourages a child to ride a bicycle might foresee that the child's death could result from a collision with a motor vehicle. But despite the presence of some foreseeable risk, neither fundamental gestures of parental care nor ordinary milestones of childhood development can be deemed **gross** departures from the standard of care observed by ordinary men. If such were the case, we would erode the predictable boundaries between a tragic accident and criminal culpability. The trial court correctly apprehended this danger and we perceive no error in its determination.

Moreover, this case is distinguishable from both **Skufca** and **Huggins**. In **Skufca**, the children's mother actively trapped them inside a room and left them completely alone for an extended period only to perish in a fire despite the obvious risks. In **Huggins**, the defendant consciously disregarded a multitude of substantial and unjustifiable risks, including driving while tired, exceeding the maximum passenger limits, failing to secure the children in an overcrowded vehicle, and speeding. The conduct at issue in **Skufca** and **Huggins** easily exceeded the minimum standard presupposed by the "more-likely-than-not" test used to assess the reasonableness of inferences employed to determine whether a *prima facie* case of criminal culpability was present. In both **Skufca** and **Huggins**, reasonable inferences could be drawn from the circumstances to show that the defendants' conduct more likely than not evinced criminal culpability. We conclude that the same cannot be said in this instance. As such, the Commonwealth failed to establish a *prima facie* case to support the charge of involuntary manslaughter and, thus, the first issue as presented on appeal fails.

Next, the Commonwealth asserts that the trial court erred by dismissing the criminal charge of endangering the welfare of a child lodged against Copney:

> The Commonwealth established *prima facie* evidence that the infant was less than six years of age and the son of [Copney]. *Prima facie* evidence was also established to support that [Copney] was aware of his duty to protect the child; was aware that the baby was in circumstances that threatened the child's physical or psychological welfare; and [Copney] engaged in unsafe sleeping with the infant, either failed to act or took actions

so lame or meager that such actions could not reasonably have been expected to be effective to protect the child's physical or psychological welfare.

Commonwealth's Brief, at 35-36.

Pursuant to Section 4304, "[a] parent, […] supervising the welfare of a child under 18 years of age […] commits an offense if he knowingly endangers the welfare of a child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4303(a)(1). The grading of the offense is increased if the child is under six years of age. *See* 18 Pa.C.S.A. § 4303(b)(2). As mentioned previously, the Crimes Code defines "knowingly" as follows:

> A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2). Moreover, this Court has previously determined:

> evidence is sufficient to prove the intent element of the offense of endangering the welfare of a child, 18 Pa.C.S.A. § 4304, when the accused is aware of his or her duty to protect the child; is aware that the child is in circumstances that threaten the child's physical or psychological welfare; and has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect the child's physical or psychological welfare.

*Commonwealth v. Cardwell*, 515 A.2d 311, 315 (Pa. Super. 1986).

Here, the trial court determined that the evidence presented did not establish a violation of a duty of care. Trial Court Opinion, 8/13/2020, at 7.

We agree with the trial court that, despite Copney's knowledge of some potential risk, the evidence failed to establish that Copney's actions constituted a violation of a duty of care. Hence, Copney did not knowingly place his son into threatening circumstances. Likewise, the evidence was insufficient to show that Copney was practically certain that his conduct would result in the child's death. Instead, Copney expected his actions to be effective to protect the child's physical welfare. As such, the Commonwealth failed to provide *prima facie* evidence that Copney knowingly endangered the welfare of the child. Accordingly, the trial court did not err in granting Copney's petition for *habeas corpus* and dismissing the criminal charges against him.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021